## POSSESSION WITH GUILTY INTENT OF ARTICLES CAPABLE OF BEING CONVERTED INTO A STILL.

Court of Common Pleas for Clark County.

THE STATE OF OHIO v. WILLIAM A. SHY.*

Decided, January 23, 1922.

*Crabbe Act—Dealer Offering for Sale with Guilty Intent—Articles Capable of being Assembled and Used as a Still—Answerable Under this Act—Burden of Proof.*

1. If one with the ultimate intent of producing property designed for the manufacture of intoxicating liquor, assembles together articles which may have been originally manufactured for an innocent purpose, and has in his possession such assembled articles, with the guilty purpose of selling them to one intending to use them in violation of law, such a person would fall within the provisions of Section 6412-16, 108 O. L. Part 2, 1182, even though each of the articles so assembled might in itself be used for an innocent purpose.

2. Where one has in his possession property evidently designed, and by him intended for the manufacture of intoxicating liquor, he falls within the provisions of the act, even though the property may initself not be a complete apparatus, and even though the may in itself not be a complete apparatus, and even though the one posessing it does not intend to use it himself for the manufacture of intoxicating liquors, but intends to sell it to others for that purpose.

3. The question of intent is always a fact to be proved, so that a person who may possess such articles for an innocent purpose, would be in no danger of conviction. The purpose for which he has possession of the property, or his guilty knowledge, is the essence of the offense.

*Donald Kirkpatrick*, for the state.
*Charles B. Zimmerman*, for defendant.

* Affirmed by the Court of Appeals, March 24, 1922.

GEIGER, J.

The defendant was tried upon an affidavit, the essential part of which is as follows:

"One William A. Shy did then and there have and possess property designed for the purpose of the manufacture of intoxicating liquors intended for use in the violation of law, and which had been used in violation of law. to-wit, copper tanks, and lids, four, six, eight and ten gallons capacities, with copper connections and clamps; that the having and possessing of said property, designed for the manufacture of intoxicating liquor, intended for use in violation of law as aforesaid by the said William A. Shy, was then and there prohibited and unlawful and contrary to Section 6412-16, of the General Code, etc."

Evidence was introduced tending to show that the defendant was the keeper of a second-hand store in the city of Springfield, located at 205 West Main street; that at that time two of the prohibition officers of the state entered the store and made inquiry about certain copper cans that had been displayed in the store window together with certain clamps and brass unions.

The evidence tended to show that the detectives, during the two visits made to the store, inquired of the defendant concerning the use of the copper vessels for the purpose of manufacturing whiskey, and that defendant told the officers, among other things, that the ten gallon cans would produce two and a half gallons of whiskey for each cooking of the mash; that one of the customers to whom he had sold a four gallon can said it would produce a gallon of whiskey from each cooking; that he had sold one hundred of different sizes in Clark county, and that all had given satisfaction.

The detectives purchased a four gallon can with three clamps and brass union for $7.25, and testified that the defendant explained the method of using the can and the connections, instructing them to punch a hole in the top of the lid and smooth the hole with a file, inserting the brass union to which the coil was to be attached; that the defendant said that the coil could be purchased at a near-by plumbing shop.

·Other evidence was introduced which tended to show that the defendant had been doing, during the past year, a considerable business; that he knew the purpose for which the cans ·were being used.; that he purchased them in large quantities from a wholesale dealer, and from the same dealer purchased the clamps and brass unions.

The detectives testified that they told the defendant that they desired to use the cans which they purchased, for the manufacture·of whiskey.

Defendant's testimony tended to show, among other things, that the cans were similar to those that could be purchased in· any store in the city; that the clamps were such as might be used by sheet metal workers in the ordinary pursuance of their business, and that the brass union which could be inserted into the hole made in the top of the lid, was such as might be purchased at plumbing stores and used for gas-stove connections; that the cans themselves had been used for innocent household purposes; that the defendant told the detectives they were copper boilers; that he refused to connect with the boiler a coil; that they were not stills, and that he did not wish any discussion of the possibility of their being used for stills, that the clamps and union were not included with the can, but were sold separately; that he told them the union would go on the top of the can, and if they wanted to they could punch a hole in the lid and insert the union, and that they could use the can in any way they might wish; that the coil could be bought at any plumbing shop in town; that he had not been told by the detectives they wished to use the can for the manufactur of liquor; that he told the detectives he did not know how much whiskey could be made with any size can; that he had been told when he purchased the cans that he was within the law.

The cans and the connections are introduced as exhibits. The cans are in capacity varying from four to ten gallons, made of copper, with copper lids of bell shape. The clamps are adapted to clamping the flange of the lid onto the flange of the can so

the lid would be securely held under considerable steam pressure; the brass unions could be inserted in a hole made in the top of the lid and securely fastened by a safety nut, so as to avoid soldering. The top of the union has metal bushing so that a copper tube of the proper size could be inserted and securely fastened by the proper adjustment of a nut.

Considering the shape, size and material from which the cans are made, the adaptability of the clamps and union, it is clear that they could be used as an important part of a completed still; that all that would be necessary to make them effective would be the addition of the coil; that the defendant had knowledge of the purpose for which the cans were being used, and gave instructions as to how they could be adapted to the ultimate purpose of distilling liquor; that he had knowledge of the fact that the cans purchased from him were so used; that their purchase and sale by him in large quantities was not along the line of the business in which he was engaged, namely, a second-hand dealer.

The question then remains whether or not he is guilty under the provisions of Section 6212-16 of the Crabbe Act, 108 O. L., part 2, page 1182, which provides "it shall be unlawful to have or possess any liquor or property designed for the manufacture of liquor intended for use in violation of law, or which has been so used, and no property rights shall exist in any such liquor or property."

It is urged by the defendant that this statute is only intended to punish one who may himself use the property in violation of law; that as no liquor could be made with any one or all of the articles purchased without the addition thereto of a coil, the defendant could not be held guilty under the law; that the copper can or container was no more "designed" for the manufacture of liquor than for any other innocent purpose for which it might be used; that the union was not designed for the use of a still, and that the clamps were such as are commonly employed by metal workers; that the word "designed" is descriptive of the character of the property itself, and if the property was not

designed for the use of a still and was not complete for such purpose, its possession by the defendant was not illegal.

Section 25, Title 2 of the Volstead act, is the provision identical with that of the Crabbe act above quoted.

The first question arises as to the use of the word "designed." Does it mean any property that is planned or constructed by its manufacturer for the purpose of manufacturing intoxicating liquor, or does it mean any property intended or planned for such use by the person having it in his possession?

If the statute is intended to reach only articles that have been originally designed by their manufacturer for unlawful use, then the assembling together of otherwise innocent parts, for an ultimate unlawful purpose, could not be punished.

If one, with the intent of ultimately producing property designed for the manufacture of liquor, assembles together articles which may have been originaly manufactured for an innocent purpose, and has in his possession such assembled articles, so that they may be sold at the same time to one intending to use them in violation of law, the court is of the opinion that he would fall within the provisions of the statute, even though each of the individual articles so assembled might in itself be used for an innocent purpose, providing such property can be considered as designed for the manufacture of liquor, where some essential, addition part, such as the coil, is missing.

It is claimed by the defendant that it would be impossible for one to manufacture intoxicating liquors with the use of the can, clamps and union, and that before the property can be within the description of the statute it must be complete in itself, so that liquor may be manufactured.

On this point there is a singular dearth of decisions—none being found in Ohio, and only a few elsewhere.

An analogous question arose in the states of Massachusetts and Vermont, in about the year 1845, in reference to property possessed for the purpose of the manufacture of counterfeited coins. In the case of *State* v. *Griffin*, 18 Vt., page 198, it is held, "The

statute which imposes a penalty for having in possession any mold, pattern, die, etc., adapted or designed for coining, is intended to reach every part of the apparatus of coining, however much more might be necessary to make that effective. Therefore if it be shown that the respondent had in his possession one-half of a mold, it is sufficient without proof that he also had the other half.'' Redfield, J., delivering the opinion says:

''The alleged defect in the proof in this case is that the respondent had only the mold for one side of the coin, and that to constitute the entire offense the person must have in his possession, what would mold at least one entire coin. This reasoning is ingenious, but certainly fallacious. The same severity of criticism would except from the operation of the statute, every tool, or instrument, if it had any material defect, so that in its present form, it could not be applied to the purposes of coining; or, if one side of the mould were found in one man's possession, and the other half in that of another, and no concert were shown between them, would put the case beyond the reach of the statute. The statute was intended to reach every part of the apparatus for coining, however much more might be necessary to render that part effective.''

To the same effect is the case of *Commonwealth* v. *Kent*, 47 Mass., 221, wherein the defendant was convicted of having in his possession an instrument designed for making counterfeit coins, with intent to use the same, said instrument being only adapted for making one-half of the coin. It was urged that in as much as only part of the coin could be made, and not a complete coin, that the defendant could not be held guilty. It was held that the instrument was adapted or designed for coining, although not capable of making an entire coin.

'' 'Adapted for coining' is a matter of description, and applies to any instrument which may be used in the formation of any part of the coin, and the question of intent is always a fact to be proved, so that a person possessing such instrument for an innocent purpose, would not be in danger of conviction.''

The court points out that if this were not so, any number of counterfeiters might group themselves together and each pro-

duce a single part of the completed counterfeit, and none could be convicted. The court says:

"But the statute, we think, is not chargeable with this imbecility. It was intended to declare the possession of any instrument fitted and adapted for counterfeiting, a crime, if intended to be used for that criminal purpose."

A counterfeiting case will be found in 9 Ohio, page 134, under the title of *Sutton* v. *State.*

The indictment was drawn under a section of an act of 1835, providing, among other things, that if one "shall knowingly have in his possession, and secretly keep any instrument for the purpose of counterfeiting any of the coins aforesaid," etc., he shall be punished. (13094, G. C.)

The first count of the indictment charged that the defendants did knowingly and wilfully have in their possession and secretly kept, one bogus, one press, one pressing machine, one stamping machine, one set of dies, etc., the same then and there being instruments for the purpose of counterfeiting coins of silver. The court held the indictment good.

It will be observed that the statute there under consideration prohibits the making or keeping of *any* instrument for the purpose of counterfeiting, and that the indictment alleges the possession of a number of different instruments, no one of which alone could make a counterfeit coin. The indictment alleges that they were instruments for the purpose of counterfeiting coins. It is quite clear that the view of the court was that the possessing of any instrument which was for the purpose of counterfeiting coins, was prohibited, even though the individual instrument was not sufficient for the complete process. It is also apparent that it was not necessary that the party accused should possess and secretly keep an instrument for his own purpose in counterfeiting coins, but the statute condemned the making and secret keeping of an instrument which was an instrument to be used by any one for the purpose of counterfeiting coins.

It will thus be seen that it has long been decided that statutes providing for the punishment of those possessing instruments designed for the purpose of counterfeiting may be punished, even though the instrument possessed, was not, in itself, capable of producing the entire counterfeit.

It may be pointed out that these cases are not analagous, in that the apparatus now under consideration, could not produce any portion of the intoxicating liquor. But this may be answered by the statement that no intoxicating liquor could be produced without the use of some apparatus in which the mash could be heated, which is a part of the process of manufacture of the intoxicating liquor.

Counsel for defendant cite the case of *Davis* v. *State,* Court of Appeals of Georgia, decided November 4, 1919, 100 S. E., 782, where one was convicted under the statute providing it shall be unlawful to have on one's premises, an apparatus for distilling or manufacturing liquors; the indictment alleging that the defendant did have on his premises, apparatus for distilling liquor—said apparatus consisting of a complete still and two barrels of mash. The evidence shows that the still was complete, except for the worm, and condenser, and that a complete still includes the worm and condenser.

It was held that the evidence did not show that a "complete still" is found, and that therefore it was insufficient to support the indictment.

The value of this case to the defendant is lessened by the case of *Strickland* v. *State,* Court of Appeals of Georgia, decided March 2, 1920, 102 S. E., p. 383, wherein the case of *Davis* v. *State* above referred to, is held not to be in point, in that in that case the indictment charged the possession of an apparatus consisting of a "complete still," and having charged that the apparatus constituted a complete still, the state was required to prove the allegation. In the case last referred to, the indictment described the apparatus as apparatus for distilling and manufacturing intoxicating liquors, and the state proved that it was used for the purpose, even though the apparatus was

lacking in some essential part.  The word "apparatus" is inter-
preted to mean any apparatus used to make intoxicating liquors,
and it was held it is not necessary that the apparatus should be
complete in itself, and include every part of a complete still.

The case of *Strickland* v. *State,* Court of Appeals of Georgia,
decided July 26, 1921, 108 S. E., p. 124, holds that in order to
convict a person of knowingly having upon his premises any
apparatus for the distilling or manufacturing of intoxicating
liquors, it is not necessary for the state to prove, unless it is so
charged in the indictment, that a complete apparatus, or all
the apparatus necessary for the making of whiskey, was found
upon the premises.

In the case of the *United States* v. *Puback,* District Court,
Western Division of Pennsylvania, 1920, 268 Fed. Rep., 392, it
is held that the words "property designed for the manufacture
of liquor" as used in the National Prohibition Act, Title 2, Sec-
tion 25, are broad enough to include a still and distilling ap-
paratus, whether set up or not, and mash, wort and wash.

The section under consideration is identical with the section
of the Crabbe act now under consideration.

The above cited cases are all that can be found in the United
States after diligent search, touching upon the question whether
or not one can be convicted when having in his possession prop-
erty designed for the manufacture of liquor, where the prop-
erty so possessed was not complete in itself.

It seems to this court in view of the purposes of the Crabbe
act, as stated in Section 1 thereof, that it must be held that when
one has in his possession property evidently designed, and by
him intended for the manufacture of intoxicating liquors, he
falls within the provision of this act, even though the property
may in itself not be a complete apparatus, and even though he
himself does not intend to use it for the manufacture of intox-
icating liquors, but intends to sell it to others for that purpose.
It is quite evident that the free traffic in material that can be
easily converted into effective stills greatly promotes the manu-
facture of liquor, and places upon the state the immense bur-

den of searching out the boot-leggers, where it might more affectively and less expensively, prevent the manufacture of liquor by stopping the sale of the appliances which facilitate its manufacture where sold with guilty knowledge of its intended use. Of course it is always incumbent on the State to prove the guilty knowledge of the party charged. Guilty knowledge is the essence of the offence and one innocently possessing such property would not be subject to a penalty.

If the defendant could not be held guilty because the property found in his possession was not sufficient to effectively manufacture the liquor, the same reasoning would necessitate a like holding in the case of one who was found in possession of a complete still, because such complete still alone would not be affective in the manufacture of the liquor. To the still must be added mash and the fire to heat the mash, the mash and fire being just as necessary, as is the still itself.

In the trial of liquor cases, considerable quantities of the product of illicit distilling, graphically described in the picturesque nomenclature of the new industry, as "white mule," has been displayed in court, and there is no doubt that it could be manufactured from an apparatus of which the property such as was found in the possession of the defendant, would be an important and essential element, by the mere addition of a coil, or other condensing apparatus.

In the opinion of the court the defendant is guilty as he stands charged in the affidavit.